FILED
CLERK

3/5/2019 8:48 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,       : 16-cr-00573-JFB-1
                                :
     - versus -                 : U.S. Courthouse
                                : Central Islip, New York
ITZHAK HERSHKO,                 :
                                : February 5, 2019
             Defendant          : 10:20 AM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S:**


**For the Government**:          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                         BY:     **Charles P. Kelly, Esq.**
                                 Assistant U.S. Attorney
                                 100 Federal Plaza
                                 Central Islip, NY 11722


**For the Defendant**:           **Stephen P. Scaring, Esq.**
                                 Steven P. Scaring, P.C.
                                 666 Old Country Rd.
                                 Suite 501
                                 Garden City, NY 11530



**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Road
                                 West Islip, NY 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Calling case 16-cr-573, United

2  States of America v. Hershko.

3          Will the parties please state your appearances

4  for the record.

5          MR. KELLY:  For the United States, Assistant

6  U.S. Attorney Charles P. Kelly, with me is Special Agent

7  from the FBI Michael Linder (ph.).

8          Good morning, your Honor.

9          THE COURT:  Good morning.

10          MR. LINDER:  Good morning.

11          MR. Scaring:  For the defendant Stephen

12  Scaring.  The defendant is present.

13          Good morning, your Honor.

14          THE COURT:  Good morning, Mr. Scaring.  And as

15  noted, Mr. Hershko is present.  Good morning, Mr.

16  Hershko.

17          THE DEFENDANT:  Good morning, your Honor.

18          THE COURT:  My understanding is your client has

19  an application today, Mr. Scaring?

20          MR. SCARING:  Yes, your Honor.  We do.  The

21  defendant is prepared to plead guilty to Count 1 of the

22  indictment, pursuant to a plea agreement that's been

23  entered into with the government.

24          THE COURT:  Okay.  Mr. Hershko, is that

25  correct?

3

Proceedings

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  All right.  Before I can accept

3  your guilty plea to Count 1, the law requires me to ask

4  you a number of questions, so that I can establish to my

5  satisfaction that you wish to plead guilty this morning

6  because you are, in fact, guilty and not for some other

7  reason.  I also need to establish that you know what

8  rights you're giving up today by pleading guilty.

9    So I am going to ask you a series of questions.

10  If you don't understand one of my questions, let me know

11  and I will rephrase it or if you want to speak to Mr.

12  Scaring at any time for any reason before answering a

13  question, let me know and I will give you as much time as

14  you need to do that, okay?

15    THE DEFENDANT:  Okay.

16    THE COURT:  Okay.  Are you able to read, speak,

17  and understand English?

18    THE DEFENDANT:  Yes.  Yes, your Honor.

19    THE COURT:  Okay.  Please raise your right hand

20  for the oath.

21  I T Z H A K  H E R S H K O,

22    called as a witness, having been first duly sworn,

23    was examined and testified as follows:

24    THE COURT:  Having been sworn, your answers to

25  my questions will be subject to the penalties of perjury

4

Proceedings

1  or of making a false statement if you do not answer them

2  truthfully.

3           Do you understand that?

4           THE DEFENDANT:  I do, your Honor.

5           THE COURT: Please state your full name for the

6  record.

7           THE DEFENDANT:  Itzhak Hershko.

8           THE COURT:  And how old are you, Mr. Hershko?

9           THE DEFENDANT:  60.

10          THE COURT:  How far did you go in school?

11          THE DEFENDANT:  I had one year in the

12  university.

13          THE COURT:  Okay.  Are you now or have you

14  recently been under the care of a doctor or a

15  psychiatrist?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Could you just explain what the

18  nature of the treatment was?

19          THE DEFENDANT:  In -- on July -- on July 3rd,

20  last year, I got into a car accident and I broke my spine

21  and L1 and L3 and I had three weeks ago, surgery where

22  they put a 10 screws and two plates and infused the

23  cement to my spine.

24          THE COURT:  Okay.  Are you then continuing to

25  take medication in connection with that surgery?

5

Proceedings

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  What's the medication that you are

3   taking, if you know?

4           THE DEFENDANT:  I'm taking a pain killer, I'm

5   taking for the nerve system.  I'm taking -- well, I am

6   also suffering from a post-trauma from the war, so I am

7   taking the pills for the post-trauma as well which is

8   Xanax.

9           THE COURT:  Okay.  So you're taking -- you're

10  under the care of a psychiatrist then, too?

11          THE DEFENDANT:  No, I don't.

12          THE COURT:  Okay.

13          THE DEFENDANT:  The war was 40 years ago and

14  that's why I moved to the United States.

15          THE COURT:  All right.  But a doctor is

16  prescribing you the Xanax?

17          THE DEFENDANT:  Yes, of course.

18          THE COURT:  All right.  So you're taking the

19  Xanax for anxiety.  You're taking a pain killer for your

20  back.

21          THE DEFENDANT:  Yes and I take another

22  medication which will help my nerve systems and some

23  other pills which got to do with the healing my body.

24          THE COURT:  All right.  I just want to make

25  sure that although you're on this medication, that your

6

Proceedings

1   mind is clear today.  Do any of those medications affect

2   your ability to think clearly today?

3            THE DEFENDANT:  No, my mind is clear, sir --

4   your Honor.

5            THE COURT:  All right.  Have you been

6   hospitalized or treated for any mental illness or any

7   type of addiction including drug or alcohol addiction,

8   other than the post-traumatic stress disorder that --

9            THE DEFENDANT:  No.

10           THE COURT:  -- being treated --

11           THE DEFENDANT:  Other than that, no.

12           THE COURT:  All right.  Other than what you've

13  described to me, have you taken any other drugs,

14  medicine, or pills or any alcoholic beverages in the past

15  48 hours?

16           THE DEFENDANT:  I did this morning. I took my

17  -- those pills but nothing else.

18           THE COURT:  All right.  And you understand what

19  you're doing today?

20           THE DEFENDANT:  I do.

21           THE COURT:  All right.  Do either counsel have

22  any doubt as to the defendant's competence to plead at

23  this time?

24           MR. SCARING:  No, your Honor.

25           THE COURT:  Mr. Kelly?

7

Proceedings

1          MR. KELLY:  No, your Honor.

2          THE COURT:  On the basis of Mr. Hershko's

3    responses to my questions this morning, my observations

4    of his demeanor and the representations of the lawyers, I

5    find that he is fully competent to enter an informed plea

6    at this time.

7          Now, Mr. Hershko, have you had sufficient time

8    to discuss this case with Mr. Scarring, including any

9    possible defenses that you might have to this charge that

10   you're pleading guilty to?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Are you satisfied with Mr.

13   Scarring's representation of you in this case?

14         THE DEFENDANT:  Very much, your Honor.

15         THE COURT:  All right.  I'm now going to

16   describe to you certain rights that you have under the

17   Constitution and laws of the United States.  You are

18   giving up these rights by pleading guilty, so please

19   listen carefully.

20         Under the Constitution and laws of the United

21   States, you are entitled to a speedy and public trial by

22   a jury on the charges contained in the indictment against

23   you.  That's 16-573.

24         Do you understand that?

25         THE DEFENDANT:  Yes, your Honor.

8

Proceedings

1          THE COURT:  At the trial, you would be presumed
2     to be innocent and the government would have the burden
3     of proof and the government would be required to prove
4     your guilt by competent evidence, beyond a reasonable
5     doubt before you could be found guilty.
6          Do you understand that?
7          THE DEFENDANT:  Yes, I do, your Honor.
8          THE COURT:  A jury of 12 people would have to
9     agree unanimously that you are guilty and you would not
10    have to prove that you are innocent if you were to go to
11    trial.
12         Do you understand that?
13         THE DEFENDANT:  I do, sir.
14         THE COURT:  At that trial and at every stage of
15    your case, you would be entitled to be represented by a
16    lawyer and if you could not afford a lawyer, one would be
17    appointed at public expense, free of cost to represent
18    you at each and every stage of the criminal proceeding.
19         Do you understand that?
20         THE DEFENDANT:  Yes, your Honor.
21         THE COURT:  During the trial, the witnesses for
22    the government have to come into the courtroom and
23    testify in your presence.  Your lawyer could cross-
24    examine the witnesses for the government, your lawyer
25    could object to evidence offered by the government and

9

Proceedings

1    your lawyer could offer evidence on your behalf, if you

2    se desired.  You also have the right to have subpoenaed

3    issues or other process used to compel witnesses to

4    testify in your defense.

5              Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  At the trial although you would

8    have the constitutional right to testify if you chose to

9    do so, you would also have the constitutional right not

10   to testify and if you decided not to testify, no one,

11   including the jury, could draw any inference or

12   suggestion of guilt from the fact that you did not

13   testify.

14             Do you understand that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  If you are convicted at the trial,

17   you would have the right to appeal the jury's verdict.

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Even now as you are offering to

21   enter this guilty plea, you have the right to change your

22   mind, continue in your plea of not guilty and go to trial

23   on the charges contained in the indictment against you.

24             Do you understand that?

25             THE DEFENDANT:  Yes, your Honor.

10

Proceedings

1          THE COURT:  If you plead guilty, and if I

2    accept your plea, you will be giving up your right to a

3    trial and all of those other rights that I've just

4    discussed with you, other than your right to an attorney

5    because obviously, you have the right to an attorney

6    regardless of whether or not you plead guilty.

7          But I want to make sure you understand that

8    once you plead guilty, there will be no trial and I will

9    enter a judgment of guilty and sentence you on the basis

10   of your guilty plea after I've considered what's called

11   the presentence report and the submissions and arguments

12   by both sides in connection with your sentencing.

13          I also want to make sure you understand that

14   there will not be an appeal to the higher court on the

15   question of whether you did or did not commit the crime

16   you're pleading guilty to today.

17          Do you understand those things?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  If you plead guilty, you also have

20   to give up your right not to incriminate yourself because

21   in a minute, I am going to ask you some questions about

22   what you did in order to satisfy myself that you are

23   guilty as charged and you will have to admit and

24   acknowledge your guilty under oath.

25          Do you understand that?

11

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Mr. Hershko, are you willing to

3    give up your right to a trial and the other rights that I

4    have just discussed with you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.  I am just going to

7    summarize the count you're pleading guilty to.  As you

8    know, Count 1 of the indictment charges you with

9    conspiracy -- participating in the conspiracy to commit

10   bank fraud and specifically alleges that between August

11   of 2004 and December of 2006, you agreed with others to

12   knowingly and intentionally execute a scheme or an

13   artifice to defraud financial institutions, specifically

14   Chase Bank, and Bank of America and to obtain their money

15   by false pretenses and promises and specifically charges

16   that you had a scheme where you had straw purchasers

17   pretend to be obtaining mortgages by providing fraudulent

18   information on applications to the banks and thereby

19   fraudulent induce the banks to loan money to the straw

20   purchasers or to purchase loans from other mortgage

21   lenders when in reality, you were behind those -- you

22   were the person who was obtaining the property, that

23   these were just straw purchasers that you were placing in

24   this position in order to defraud the banks.  And then

25   there's a list of properties that the indictment lists as

12

Proceedings

1  having been fraudulently -- that mortgages were obtained

2  and properties -- the purchase of properties occurred in

3  a list that's contained on page 3 and 4 of the

4  indictment.

5          And obviously, this is charged as a violation

6  of the federal law that makes it a crime to commit bank

7  fraud.  That's 1344, that you conspired to violate that

8  provision.

9          Do you understand in summary, that's what

10 you're charged with in Count 1?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  I am going to review with you what

13 the elements the government would have to prove to the

14 jury beyond a reasonable doubt if you were to go to trial

15 on that charge.  You're giving up your right to having

16 proved these things but I just want to make sure you

17 understand what they otherwise have to prove.

18          There's actually two different provisions of

19 1344, they've charged both of them.  They would have to

20 prove one or the other.  So I will just go through the

21 elements of each of the subsections separately.

22          The jury would have to agree unanimously as to

23 each one of these you violated.  So there would have to

24 be a unanimous agreement you violated this subsection (1)

25 or subsection (2).

13

Proceedings

1          So with respect to subsection (1), they would

2     have to prove first that there was a scheme to defraud a

3     bank.

4          The second element they would have to prove --

5     well, first they would have to prove that there was an

6     agreement between -- this is a conspiracy, so it has to

7     be more than you.  You have to agree with another person

8     to commit bank fraud.  The other elements that you -- of

9     bank fraud, the objective of bank fraud has the following

10    elements:

11         A scheme to defraud a bank, that you executed

12    or attempted the scheme with the intent to defraud the

13    bank and specifically, the law requires that you had the

14    intent to victimize the institution by exposing it to

15    actual or potential loss.

16         And third, that at the time of the execution of

17    the scheme, the bank had its deposits insured by the

18    Federal Deposit Insurance Corporation.

19         So those are the elements that they would have

20    to prove for subsection (1).

21         Under subsection (2), the elements would be

22    first, that there was a scheme to obtain money or funds

23    owned or under the control or custody of a bank by means

24    of materially false or fraudulent pretenses,

25    representations or promises.

14

Proceedings

1          Second, they would have to prove that it was

2  obtain money or funds owned by or under the custody or

3  control of the bank, and third, they would have to again

4  prove that at the time of the execution of the scheme,

5  the bank had its deposits insured by the Federal Deposit

6  Insurance Corporation.

7          So those are the elements of the objective but

8  again, it would have to be a conspiracy, an agreement to

9  commit those objectives -- that objective with those

10 elements.

11          They would have to prove that you did this on

12 or about the dates that are alleged in the indictment and

13 they would have to prove that the fraud occurred here in

14 the Eastern District of New York, which includes Long

15 Island.

16          Do you understand in summary those are the

17 elements would have to prove to the jury beyond a

18 reasonable doubt and by pleading guilty, you're giving up

19 your right to have them prove those things?

20          THE DEFENDANT:  I do, sir.

21          THE COURT:  All right.  I am now going to

22 review with you the maximum penalties, as well as any

23 mandatory minimum penalties for the crime you're pleading

24 guilty to.

25          The maximum term of imprisonment is 30 years.

15

Proceedings

1  There is no minimum term of imprisonment.  There is a

2  maximum supervised release term of five years that would

3  follow any term of imprisonment.

4          There are conditions attached to supervised

5  release.  If you violate any of those conditions, you

6  could be sentenced to up to three years additional in

7  jail without credit for pre-release imprisonment or time

8  previously served on post-release supervision.

9          There is a maximum fine of $1 million or twice

10  the gross gain or twice the gross loss from the offense.

11  You are also subject to restitution of the victims of

12  this crime and for this crime, restitution is mandatory

13  to the victims of the crime.

14          And that would be the banks, Mr. Kelly,

15  correct?

16          MR. KELLY:  Yes, your Honor.

17          THE COURT:  So that would part of your

18  sentence, mandatory restitution.  You're also subject to

19  a $100 mandatory special assessment.

20          Do you understand those are the maximum

21  penalties, as well as any mandatory minimum penalties for

22  the crime you're pleading guilty to here today?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Are you a United States citizen?

25          THE DEFENDANT:  Yes, your Honor.

16

Proceedings

1          THE COURT:  Do you understand that as a result

2     of your guilty plea, you may lose certain valuable civil

3     rights such as the right to vote, the right to hold

4     public office, the right to serve on a jury and the right

5     to possess a firearm.

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  I am now going to decide to you

9     what the sentencing procedure is going to be.  I am sure

10    you've discussed this with Mr. Scaring but before you

11    plead guilty, it's important that you understand how

12    sentencing works and I will ask you then once I complete

13    this short summary, whether you have any questions.

14          The first thing you should understand is that

15    in the federal system, parole does not exist.  So if you

16    are sentenced to prison, you will not be released any

17    earlier on parole.

18          The second thing you should understand is that

19    the determination of what sentence you will receive is up

20    to the Court and only the Court.  Nothing that Mr.

21    Scaring told you is binding on the Court.  Nothing the

22    prosecutor may have told you is binding on the Court.  In

23    our system, sentencing is up to the judge and as we sit

24    in this courtroom today, nobody has any idea what your

25    sentence is going to be.

17

Proceedings

1      Mr. Scaring doesn't know what your sentence is
2 going to be.  Mr. Kelly doesn't know what your sentence
3 is going to be.  I don't even know what your sentence is
4 going to be because I don't have enough information to
5 make that decision.
6      As I said what will happen is there will be a
7 presentence report that will be prepared. both sides get
8 a copy of that.  They can object to that and then I will
9 receive submissions and arguments in connection with your
10 sentencing and then I will be in a position to move
11 forward.
12      You should also understand that the law
13 requires that before I impose sentence, that I consider a
14 number of factors about the case.  There's a statute that
15 lists all the factors that I should consider.  I am not
16 going to repeat all of the factors to you but just to
17 give you an example, one of the factors is the nature and
18 the circumstances of the crime, another factor is your
19 history and characteristics as a person and there are
20 other factors, as well.
21      One of the other factors I do want to highlight
22 is something called the sentencing guidelines.  The
23 sentencing guidelines are as the name suggests, a set of
24 guidelines that takes into account your relevant criminal
25 conduct in connection with the case, as well as any

18

Proceedings

1    criminal history that you have committed and then it sets

2    forth a range of imprisonment within which you could be

3    sentenced.  I emphasize the word "could" because the

4    sentencing guidelines are not mandatory.  They are only

5    advisory and therefore, I am not required to impose a

6    sentence within whatever the applicable range may turn

7    out to be.  I could sentence you above that range or

8    below that range depending upon how I weigh all of the

9    factors that I have to consider under the law.

10              Finally, whatever sentence I impose in this

11   case, no matter how happy or unhappy you may be with that

12   sentence, you may not withdraw or get bac your guilty

13   plea.  In other words, while you may appeal the sentence

14   itself, to the extent you have not waived your right to

15   appeal in your plea agreement with the government, you

16   may  not undo your being found guilty by virtue of your

17   plea here today.

18              Do you understand those things about

19   sentencing?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Do you have any questions of the

22   Court?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  Now do you enter into a plea

25   agreement with the government?

19

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  I have marked the original

3    as Court Exhibit 1 which has signatures on the last page.

4          Mr. Hershko, did you sign this agreement today

5    in the presence of Mr. Scaring?

6          THE DEFENDANT:  Yeah --

7          MR. SCARING:  Not today.  You didn't sign it

8    today.

9          THE DEFENDANT:  Not today, your Honor.

10          THE COURT:  Okay.

11          THE DEFENDANT:  But I did sign it.

12          THE COURT:  All right.  And did you read it

13    word for word before you signed it?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Did you discuss it with Mr. Scaring

16    before you signed it?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Did you understand it before you

19    signed it?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  I am just going to highlight a

22    couple of things just again, just to make sure that you

23    understand.  Paragraph 2 has an estimate of what the

24    parties think the guidelines calculation is in this case.

25    I just want to emphasize what I said a moment ago.

20

Proceedings

1    First of all, I have to determine what the
2  guidelines range is and it could turn out that the range
3  is different than the one in your agreement and if it's
4  different, you don't get an opportunity to get your plea
5  back.  And as I emphasized a moment ago, whether it turns
6  out to be the range in your agreement or whatever the
7  range turns out to be.  It's only advisory and I could
8  sentence you above or below whatever the range turns out
9  to be.

10    Do you understand that?

11    THE DEFENDANT:  Yes, your Honor.

12    THE COURT:  And then I want to point your
13  attention to paragraph 4 which states among other things,
14  that you agree not to file an appeal or otherwise
15  challenge by petition, pursuant to 28 USC Section 225 or
16  any other provision of law, the conviction or the
17  sentence in the event that the Court imposes a term of
18  imprisonment of 37 months or below.

19    So what that means is if sentence you to 37
20  months in jail or anything less than 37 months in jail,
21  you are giving up your right to appeal or otherwise
22  challenge in any way, the conviction or the sentence in
23  this case.

24    Do you understand that?

25    THE DEFENDANT:  Yes, your Honor.

21

Proceedings

1      THE COURT:  Are you waiving that right

2  knowingly and voluntarily?

3      THE DEFENDANT:  Yes, your Honor.

4      THE COURT:  Now does this agreement constitute

5  your complete agreement with the government?

6      THE DEFENDANT:  Yes, your Honor.

7      THE COURT:  Has anyone offered you any

8  inducements or threatened you or forced you to enter this

9  plea agreement or to plead guilty today?

10      THE DEFENDANT:  No, your Honor.

11      THE COURT:  Has anyone made any promise to you

12  as to what your sentence is going to be?

13      THE DEFENDANT:  No, your Honor.

14      THE COURT:  Mr. Scaring, do you have any valid

15  defense that would prevail at a trial or do you know of

16  any reason why I should not permit your client to plead

17  guilty today?

18      MR. SCARING:  No, your Honor.

19      THE COURT:  At this point, Mr. Hershko, I need

20  you to tell me under oath what you did that makes you

21  guilty of this crime.  So just tell me what you did and

22  then I may have some follow-up questions for you, okay?

23      THE DEFENDANT:  Okay.  Between August 2004 and

24  December 2006, within the Eastern District of New York, I

25  along with others, acknowledgely (sic) caused false

22

Proceedings

1   information to be provided --

2   (Counsel and client confer)

3        THE DEFENDANT:  Oh, I'm acknowledging and

4   intentionally caused false information to be provided to

5   Chase Bank and Bank of America in order to induce the

6   banks to issue mortgage loans.

7        MR. SCARING:  The words that he pronounced,

8   your Honor, I am not sure you under -- heard him but he

9   said "I along with others, knowingly and intentionally

10  caused."

11       THE COURT:  Okay.  Is that correct, Mr.

12  Hershko?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  Okay.  All right.  I am just -- the

15  law requires me to make sure that it's in your own words,

16  too.  It's fine that you prepared something that.  I

17  understand that but just put the paper aside and we're

18  just going to talk -- you're just going to talk to me,

19  just tell me what you did, okay?

20       THE DEFENDANT:  Yeah.

21       THE COURT:  So just explain what you did. How

22  did you defraud the bank?  Just explain essentially how

23  it worked.

24       THE DEFENDANT:  Well --

25       THE COURT:  What false information did you give

23

Proceedings

1  them?

2          THE DEFENDANT:  Well, I allowed the buyers to

3  be on my business -- my company's bank accounts as a VOD,

4  which is a verification of deposits.  So I've -- I

5  allowed them to be on that showing that -- like if they

6  had that money in that position, by being out of that

7  account.

8          THE COURT:  All right.  So it was really your

9  money that was being used for the purchase of these

10  properties.  Is that accurate?

11          THE DEFENDANT:  No.

12          THE COURT:  Oh.

13          THE DEFENDANT:  It was not my money.  It was

14  just -- it was required by the bank to have to show that

15  they have money.

16          THE COURT:  Okay.

17          THE DEFENDANT:  And I allowed them to use my

18  bank account.

19          THE COURT:  I understand that.  So in the

20  applications for the mortgages, they had to show they had

21  a certain amount of money in order to get the mortgage,

22  right?

23          THE DEFENDANT:  I -- yes, sir.

24          THE COURT:  And you agreed with them that they

25  would put -- falsely put down that this was their money,

24

Proceedings

1   even -- in an account, even though it was actually your

2   money and it wasn't their money.  Is that accurate?  I

3   don't want to put words in your mouth.  Just sometimes I

4   don't completely understand, so if I didn't say it right,

5   just correct me.

6           THE DEFENDANT:  Technically you're right, your

7   Honor.  I allowed them to be on my business account --

8           THE COURT:  Right.

9           THE DEFENDANT:  -- when they should not be

10  there.

11          THE COURT:  Right.  They had really nothing to

12  do with your business account, right?

13          THE DEFENDANT:  They shouldn't be there.

14          THE COURT:  Right.

15          THE DEFENDANT:  Yes.

16          THE COURT:  They shouldn't have been on your

17  business account.  You put them on there, so that you

18  could falsely claim to the bank that they had enough

19  money to get the mortgage?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  And explain to me what

22  the purpose of that was, so that once the -- you were

23  going to take control of the properties and sell them

24  then or what was --

25          THE DEFENDANT:  No, I -- I actually sold it to

25

Proceedings

1  them.

2          THE COURT:  You sold --

3          THE DEFENDANT:  I actually sold it to them but

4  in the process for them to purchase it --

5          THE COURT:  Okay.

6          THE DEFENDANT:  They had to show this paper

7  which is called VOD verification of deposit which shows

8  my bank account -- I mean, in reality, it shows my bank

9  account and it shows them as part of those bank accounts,

10  as like if they're my partners.

11          THE COURT:  All right.  So these are the -- and

12  the indictment talks about falsified HUD forms.  Those

13  are the forms that you're talking about, the Housing And

14  Urban Development?

15          THE DEFENDANT:  I'm not -- HUD forms, I think

16  it's something with the HUD forms is in the closing

17  itself.

18          THE COURT:  Right.

19          THE DEFENDANT:  That's prior to the closing.

20          THE COURT:  Right.  But that's where the false

21  information would be contained, right?

22          THE DEFENDANT:  Correct.

23          THE COURT:  All right.  And you understood that

24  this was material.  In other words that if they did not

25  falsely claim that they had this money, that they

26

Proceedings

1  wouldn't have been able to get the mortgage.  You

2  understand -- that was necessary in order to get the bank

3  to give them the mortgage?

4          THE DEFENDANT:  That was the reason why they

5  got the mortgage --

6          THE COURT:  All right.

7          THE DEFENDANT:  -- because of my action.

8          THE COURT:  Okay.  All right.

9  (Counsel and client confer)

10          MR. SCARING:  Judge, just to correct, the false

11  information was on the mortgage loan applications --

12          THE COURT:  Okay.

13          MR. SCARING:  -- that were submitted to the

14  banks and what the defendant is saying is that he had

15  access -- he had money in his accounts, so it made it

16  appear as though that money was, in fact, in the

17  purchaser's accounts in order to induce the banks to get

18  the money --

19          THE COURT:  Okay.

20          MR. SCARING:  -- to give the mortgage loans.

21          THE COURT:  Is that what he said, is that

22  correct?

23          THE DEFENDANT:  Yeah, that's correct.

24          THE COURT:  Okay.  And the banks that you

25  defrauded then in this way were JPMorgan Chase, and  Bank

Proceedings

1  of America?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And the -- this is a conspiracy, so

4  the agreement you had to do this was the straw purchaser,

5  the people who purchased, that's who you agreed to do

6  this with?  Who did you agree to commit to commit this

7  crime with?

8          THE DEFENDANT:  That was with Fairmont.

9          MR. SCARING:  It was with a mortgage broker,

10  Fairmont.

11          THE COURT:  Oh, okay.  Fair --

12          MR. SCARING:  In other words, just correct me

13  if I am wrong, Fairmont was submitting the mortgage

14  applications, were taking the mortgage applications, is

15  that correct?

16          THE DEFENDANT:  Correct.

17          THE COURT:  And they --

18          MR. SCARING:  And it was an agreement with

19  Fairmont to provide the necessary information that would

20  allow the banks to issue the mortgages and therefore,

21  that information then was allowed to be transmitted

22  through Fairmont to the banks --

23          THE COURT:  Okay.

24          MR. SCARING:  -- for the purpose of the

25  mortgage.

28

Proceedings

1        THE COURT:  Did Fairmont understand that there

2   was false information in there?

3        MR. SCARING:  Yes, your Honor.

4        THE COURT:  Okay.  Let me just confirm that.

5   So the people at Fairmont -- the people at Fairmont

6   understood that there was false information contained in

7   the mortgage applications?

8        THE DEFENDANT:  Can I one second please?

9        THE COURT:  Sure.

10  (Counsel and client confer)

11       THE COURT:  You may want to turn the mic off,

12  just so --

13       MR. SCARING:  Yeah.

14  (Counsel and client confer)

15       MR. SCARING:  So, your Honor, the -- just to

16  clarify, only because there was an intermediary bank or

17  brokerage bank --

18       THE COURT:  Yes.

19       MR. SCARING:  -- Fairmont Funding.

20       He, along with Fairmont Funding, submitted

21  false information on the mortgage applications for the

22  buyers of the property and that was fraudulent in an

23  effort to induce the banks to issue the mortgages to the

24  buyers of the property.

25       THE COURT:  Okay.  So there's someone at

29

Proceedings

1  Fairmont who you understood that there was false

2  information being submitted -- that you agreed with

3  someone at Fairmont to submit this false information in

4  connection with the purchasers, correct?

5              THE DEFENDANT:  Correct.

6              THE COURT:  All right.  And that you understood

7  that this exposed the bank to a potential loss of money.

8              You understand that, right, by putting false

9  information?

10             THE DEFENDANT:  I do, your Honor.

11             THE COURT:  All right.  And just -- this isn't

12  part of the elements but I just want to make sure that

13  there's not going to be any disagreement.  You're

14  agreeing in your plea agreement that there was a loss --

15  for purposes of your guidelines calculation, a loss of

16  $1.3 million in connection with this scheme.

17             Do you understand that?

18             THE DEFENDANT:  Yes, your Honor, but my

19  understanding, your Honor, if I may bring it up?

20             THE COURT:  Yes.

21             THE DEFENDANT:  I have still the right to prove

22  that they -- if the bank really got paid for that money

23  or lost that money.

24             MR. SCARING:  Judge, that --

25             THE COURT:  Yeah, in terms of restitution,

30

Proceedings

1   you're talking about?  Is that what you're --

2           MR. SCARING:  Let me step in, if I may.

3           THE COURT:  Okay.

4           MR. SCARING:  We have stipulated that the loss

5   amount is $1.3 million. What the defendant is saying is

6   that at some point in time, and again, we'll address this

7   in our sentencing memorandum, there was litigation and

8   various properties were -- he owned -- the defendant

9   owned the properties which were the subject of this

10  indictment and during that litigation, he transferred the

11  ownership of the property to Fairmont and the only issue

12  that he wants to make sure is that Chase Bank can -- and

13  Bank of America did not receive restitution from Fairmont

14  since these properties were apparently sold at a profit

15  by Fairmont at some time later.  This incident occurred

16  many years ago.

17          THE COURT:  Yes.

18          MR. SCARING:  So but to make it clear, as part

19  of the plea agreement, we have stipulated that the loss

20  is 1.3.  What I have advised the defendant is if we can,

21  between now and sentencing, prove that that's not true,

22  that information will be provided to the Court and to the

23  government.  But at the moment, we are stipulating that

24  that is the loss.

25          THE COURT:  Okay.  And the government

31

Proceedings

1  understands that, as well?

2          MR. KELLY:  Yes, your Honor.  That's why it

3  says mandatory restitution in an amount to be determined

4  by the Court.

5          THE COURT:  Okay.  All right.

6          THE DEFENDANT:  Excuse me, your Honor.

7          THE COURT:  Wait, hold on.  I just want to make

8  sure it's clear.  In terms of the -- you're allowing him

9  then potentially to argue that the guidelines calculation

10 should be different if the numbers come back --

11         MR. KELLY:  No, no.  The guidelines calculation

12 is stipulated to.

13         THE COURT:  Right.

14         MR. KELLY:  There's no variance from that.

15         THE COURT:  Right.

16         MR. KELLY:  But the defendant can always argue

17 that restitution does not equate to loss because there is

18 nothing in the law --

19         THE COURT:  Right.

20         MR. KELLY:  -- that says it does.

21         THE COURT:  So what the government is saying

22 and Mr. Hershko, I just want to make sure you understand

23 the difference between the loss amount for purposes of

24 your guidelines calculation versus the actual loss for

25 purposes of restitution, the government's position and

32

Proceedings

1   your -- I just want to make sure you're agreeing, that

2   the intent -- what they call the intended loss for

3   purposes of the guidelines is $1.3 million, whether or

4   not the actual loss turned out to be that way because

5   they sold the property and may have recovered more that

6   -- for purposes of the guidelines calculation, they're

7   saying that's the amount because that was the intended

8   loss.  If they turned out they did well, that would

9   obviously affect, you know, what your restitution would

10  be and also I could take into account even if the

11  intended loss was $1.3 million, what the actual loss was.

12  I could consider that fact, as well.  But for purposes of

13  the guidelines calculation, we will be using $1.3

14  million.

15              Do you understand that?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  All right.

18              THE DEFENDANT:  Your Honor, can I stand up for

19  one second?

20              THE COURT:  Sure.

21              THE DEFENDANT:  My back is killing --

22              THE COURT:  Yeah, yeah, I am sorry, you have

23  all that back pain.

24              THE DEFENDANT:  I'm sit too long.

25              THE COURT:  Yeah, if you want to just remain

Proceedings

1   standing, that's fine too.

2           THE DEFENDANT:  Yeah, if you don't mind.

3           THE COURT:  Yeah, just pull the mic a little

4   closer.  We're almost done.

5           And when you did these things, you did them

6   knowingly and intentionally, Mr. Hershko?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  You understood it was against the

9   law to submit false information to the bank?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Are there any other

12  questions you want me to put to the defendant, Mr. Kelly?

13          MR. KELLY:  That he did them voluntarily, your

14  Honor.

15          THE COURT:  Yes, you did these things

16  voluntarily?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Can the government summarize what

19  its proof would be if the defendant went to trial?

20          MR. KELLY:  We would put on testimony of a

21  mortgage broker, your Honor, to the effect that defendant

22  was involved in this fraud.  We would put on the

23  testimony of straw purchasers who were recruited by the

24  defendant to testify that their assets and their income

25  were inflated and that that was pursuant to an agreement

34

Proceedings

1    with the defendant.

2              We would put on the banks to show the losses

3    they incurred and that they were FDIC insured and that we

4    would put on exhibits consistent with the testimony of

5    these seven witnesses, your Honor.

6              THE COURT:  All right.  You would be able to

7    show that the false statements were material in terms of

8    the bank.

9              MR. KELLY:  Yes, the bank officer would testify

10   that this is the reason under the guidelines that the

11   bank had that the loans were granted.

12             THE COURT:  Okay.  And you would be able to

13   prove it occurred on or about the dates in the

14   indictment?

15             MR. KELLY:  Yes, 2004 to 2006 in the Eastern

16   District of New York, your Honor.

17             THE COURT:  All right.  Let me just cover the

18   venue and the FDIC element with defendant.  So I didn't

19   ask you this, were you submitting these bank applications

20   on Long Island?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Okay.  And then one of the elements

23   the government would have to prove is that these banks

24   were insured by the FDIC, that's an element they said

25   they can prove that.  I just want to make sure you agree

35

Proceedings

1  with that.

2           THE DEFENDANT:  May I --

3           THE COURT:  Yes.

4           THE DEFENDANT:  -- consult my attorney for a

5  second?

6           THE COURT:  Yeah.

7  (Counsel and client confer)

8           THE DEFENDANT:  I understand, your Honor.

9           THE COURT:  You under -- so you're not

10  disputing that.

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Okay.  And you can please stand

13  now.

14          How do you plead now, Mr. Hershko, to Count 1

15  of the indictment that charges you with conspiracy to

16  commit bank fraud, guilty or not guilty?

17          THE DEFENDANT:  Guilty.

18          THE COURT:  Did you do what you're charged with

19  doing in Count 1, Mr. Hershko?

20          THE DEFENDANT:  Yes. Yes, your Honor.

21          THE COURT:  Are you pleading guilty today

22  because you are, in fact, guilty?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Are you pleading guilty voluntarily

25  and of your own free will?

36

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  Because you acknowledge that

3   you are guilty as charged in Count 1, because you know

4   your rights and are waiving them, because your plea is

5   entered knowingly and voluntarily and supported by an

6   independent basis, in fact, for each of the elements of

7   the offense, I accept your guilty plea and I adjudge you

8   guilty of Count 1 of the indictment.

9          I will direct the probation department to

10  prepare the presentence report.  Do you wish to be

11  present for that interview, Mr. Scaring?

12         MR. SCARING:  Yes, your Honor.

13         THE COURT:  Okay.  That will be noted in the

14  paperwork.  We'll set sentencing.  I see the date on the

15  plea agreement.  Is that it?

16         MR. SCARING:  Yes, your Honor.

17         MR. KELLY:  Yes, your Honor.

18         THE COURT:  September 19th?

19         MR. KELLY:  September 19th at 10.

20         THE COURT:  Okay.  We'll set September for

21  September 19th at 10 a.m.  Mr. Hershko, you understand

22  that your current bail conditions continue.

23         Do you understand that?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  All right.  Is there anything else

37

Proceedings

1  today from the government then?

2         MR. KELLY:  No, your Honor.

3         THE COURT:  Anything else from the defense?

4         MR. SCARING:  No, your Honor. Have a nice day.

5         THE COURT:  All right.  You, too.

6         THE DEFENDANT:  Thank you, your Honor.

7         THE COURT:  You're welcome.

8              (Matter concluded)

9                    -o0o-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **March**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.